UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  10-60332-CR-MOORE/SIMONTON

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ELLISA MARTINEZ,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter arose upon the Motion to Dismiss Indictment (DE # 27), filed by

Defendant Ellisa Martinez.  The Honorable K. Michael Moore, United States District

Judge, has referred this matter to the undersigned United States Magistrate Judge (DE #

18).  The Government has responded in opposition (DE # 33), and the undersigned

Magistrate Judge heard oral argument on the motion (DE # 42).  For the reasons stated

below, the undersigned recommends that the Motion to Dismiss be denied.

I.      **BACKGROUND**

Defendant Ellisa Martinez has been charged in a one-count Indictment with

transmitting in interstate commerce a communication containing a threat to injure

another person, in violation of Title 18, United States Code, Section 875(c) (DE # 11).

Specifically, the Indictment alleges the following:

> On or about November 10, 2010, in Broward County, in the
> Southern District of Florida, the defendant, ELLISA MARTINEZ,
> aka . . ., did knowingly transmit in interstate commerce a
> communication, that is an email form response, to WFTL Radio,
> which communication contained a threat to injure the person of
> another, in violation of Title 18, United States Code, Section
> 875(c).

The Affidavit filed in support of the Criminal Complaint, which preceded this

Indictment, quotes the following email message sent on November 10, 2010, from an

email address associated with the Defendant to the computer account of Joyce Kaufman

at WFTL:

> Dear Ms. Kaufman I was so thrilled to see you speak in
> person for congressman elect west.  i was especially exited
> to hear you encourage us to exercise our second
> amendment gun rights.  i felt your plan to organize people with guns in
> the hills of Kentucky and else where was a great idea.  i know
> that you know one election is not enough to take our country
> back from the illegal aliens, jews, muslims, and illuminati
> who are running the show.  i am so glad you support people
> who think like me.  i'm planning something big around a
> government building here in Broward County, maybe a post
> office, maybe even a school, I'm going to walk in and teach
> all the government hacks working there what the 2nd
> amendment is all about.  Can i count on your help?  you and
> those people you know in Kentucky?  we'll end this year of
> 2010 in a blaze of glory for sure.  thanks for your support mrs
> kaufman.  what does sarah say, don't retreat, reload!  let's
> make headlines girl!

(DE # 1, ¶ 5, grammatical errors in original).

   II.   __THE MOTION TO DISMISS__

   The Defendant moves to dismiss this Indictment on three grounds: First, the

Defendant contends that the Indictment fails to state an offense because it does not

allege that the Defendant "subjectively intended to convey a threat to injure the person

of another."  Second, the Defendant contends that the statute under which Ms. Martinez

is charged, 18 U.S.C. § 875(c), is unconstitutionally overbroad; and, finally, the

Defendant contends that the statute is unconstitutionally vague since it fails to put a

reasonable person on notice of the speech it proscribes (DE # 27).  Each of these

arguments, and the Government's corresponding response in opposition, is addressed

below.

III.   **THE INDICTMENT IS SUFFICIENT**

The Defendant contends that the Indictment is insufficient because it fails to allege that the Defendant subjectively intended to convey a threat to injure others (DE # 27 at 2-3).  In her brief, however, as well as at the hearing, she agreed that, under binding Eleventh Circuit precedent, subjective intent is not an element of the offense, and the Indictment is sufficient.  Specifically, the Eleventh Circuit held in *United States v. Alaboud*, 347 F.3d 1293, 1296-97 (11th Cir. 2003), *quoting*, *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir. 1974)[1] :  "A communication is a threat when in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor. . . . The offending remarks must be measured by an objective standard."  (internal citations and quotation marks omitted).  The Defendant agreed that she raised this argument to preserve it for appellate review, and to support her argument that, based on this construction, the statute is unconstitutionally overbroad and vague.

Therefore, the undersigned recommends that the motion to dismiss be denied insofar as it is based upon the insufficiency of the Indictment.

IV.   **THE STATUTE IS NOT FACIALLY OVERBROAD**

The Defendant contends that, as construed above, 18 U.S.C. § 875(c) is unconstitutionally overbroad because, without a requirement of subjective intent, it facially applies to a substantial amount of expression that is protected under the First Amendment.  In response, the Government asserts that by construing the statute to apply only to "true threats," the Courts have limited its application so that it captures

---

[1]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals that were handed down prior to October 1, 1981.

only speech that is unprotected under the First Amendment.

>        A.        Framework for Analysis

The starting point for analysis of such a claim is *Broadrick v. Oklahoma*, 413 U.S.
601 (1973).  In *Broadrick*, the Supreme Court recognized the general rule that a person
cannot challenge the constitutionality of a statute "on the grounds that it may
conceivably be applied unconstitutionally to others, in other situations not before the
Court."  *Id.* at 610.  Where a statute impinges on the First Amendment protections of
freedom of speech and association, however, the Court held that facial challenges were
permitted because "the possible harm to society in permitting some unprotected speech
to go unpunished is outweighed by the possibility that protected speech of others may
be muted and perceived grievances left to fester because of the possible inhibitory
effects of overly broad statutes."  *Id.* at 611.

Recently, in *United States v. Stevens*, 130 S. Ct. 1577 (2010), the Court reiterated
the framework for analyzing such claims.  At the outset, the Court noted that under the
First Amendment, the government cannot restrict expression because of its message,
ideas, subject matter or content, except in a few limited areas such as obscenity,
defamation, fraud, incitement and speech integral to criminal conduct.  *Id.* at 1584.
Aside from these limited areas, however, in the First Amendment context, "a law may be
invalidated as overbroad if 'a substantial number of its applications are unconstitutional,
judged in relation to the statute's plainly legitimate sweep.' "  *Id.* at 1587 (internal
citations omitted).

In this regard, the undersigned notes that in *United States v. Watts*, 394 U.S. 705,
707 (1969), the United States Supreme Court summarily rejected a First Amendment
challenge to 18 U.S.C. § 871, which makes it a crime to threaten to injure the President,

noting that the statute requires the Government to prove a "true threat."  The Court then turned to how the statute was applied in the case before it.  Measured against the requirement of a "true threat,"  the petitioner's conviction was reversed since the speech for which he was convicted was protected political hyperbole that could not have been interpreted as a "true threat."[2]   The Court found it unnecessary to reach the issue of the level of intent required to sustain a conviction under the statute.

Thus, the first step in the analysis is to construe the statute, since "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."  *Id*. at 1588, *citing  United States v. Williams,* 553 U.S. 285, 293 (2008).  Thereafter, the Court must examine whether the statute, as construed, "criminalizes a substantial amount of protected expressive activity."   *Williams*, 553 U.S. at 297.

### B.  Application of this Framework to 18 U.S.C. § 875(c)

The statute under which the Defendant is charged, 18 U.S.C. § 875(c), provides:

> Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

The elements of section 875(c), as construed by the Eleventh Circuit, are set forth in the Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Offense Instruction 30.3 (2010):

> The Defendant can be found guilty of this crime only if the Government proves beyond a reasonable doubt that the Defendant knowingly sent a message in interstate commerce containing a true threat to injure the person of another.

---

[2]  The statement made by Watts at an anti-war rally was: "I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming.  I am not going.  If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."  *Watts*, 394 U.S. at 706.

> **To transmit something in "interstate commerce" means to send it from a place in one state to a place in another state.**
>
> **A "true threat" is a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would lead a reasonable person to believe that the Defendant intended to injure another person.**
>
> **The heart of the crime is intentionally sending a true threat in interstate or foreign commerce.  The Government doesn't have to prove that the Defendant intended to carry out the threat.**

The Defendant asserts that this statute is overbroad since, absent a requirement of subjective intent, it permits conviction for a substantial amount of protected speech. To support her claim, the Defendant points to a variety of communications that she contends are protected under the First Amendment, but would subject the speaker to criminal prosecution under the statute, including the following:

- The conspiracy between the prosecutor and the case agent in this case to upload the Complaint in this case, which contains the threatening communication that is the subject of this communication.

- President Bush's comments in a national address in March 2003 that the United States would commence bombing Iraq within 48 hours if Saddam Hussein did not surrender and leave the country.

- President Obama's comments to the members of a musical group that his daughters were huge fans, "but, boys, don't be getting any ideas.  I have two words for you: predator drones."

- The news media's coverage of each of these communications.

The Defendant contends that the only way to preserve the constitutionality of the statute so that it does not reach the above protected speech is to include an element of

subjective intent.  In this regard, the Defendant relies on language used by the Supreme

Court in *Virginia v. Black*, 538 U.S. 343, 363-64 (2003), when it considered the

constitutionality of a Virginia statute which banned cross burning.  The Supreme Court

provided the following analysis regarding a First Amendment challenge to that statute:

> The protections afforded by the First Amendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution.  See, *e.g.*, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942). . . .
>
> Thus, for example, a State may punish those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." . . . And the First Amendment also permits a State to ban a "true threat."  *Watts v. United States*, 394 U.S. 705, 708 (1969). . . . accord, *R.A.V. v. City of St. Paul*, [505 U.S. 377, 388 (1992)] ("[T]hreats of violence are outside the First Amendment") . . . .
>
> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat.  Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people from the possibility that the threatened violence will occur."  *Ibid.*  Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death."

538 U.S. at 358-60.

The Defendant contends that by defining "true threats" as "where the speaker

means to communicate a serious expression of intent to commit an unlawful act of

violence," the Supreme Court necessarily held that a requirement of subjective intent is

a precondition to a finding of constitutionality.  For the reasons stated below, the

undersigned disagrees, and concludes as other courts have that this language of the

Supreme Court is more appropriately interpreted as stating that there must be an intentional, i.e., knowing, communication of what is an objectively serious threat.

In *United States v. Francis*, 164 F.3d 120 (2d Cir. 1999), the Second Circuit expressly rejected the contention that absent a requirement of subjective intent, section 875(c) impermissibly infringed upon First Amendment protections.  Rather, the Court held that by limiting the reach of the statute to true threats, "it is no longer protected speech because it is so intertwined with violent action that it has essentially become conduct rather than speech." 164 F.3d at 123.  Courts that have considered the objective standard after *Black* have adhered to this result.  In *United States v. White*, Case No. 7:08-CR-00054,  2010 WL 438088 (W.D. Va.  Feb. 4, 2010), the Court expressly held that *Black* did not require the insertion of a subjective intent element to sustain the constitutionality of section 875(c).  Rather, the Court held that the "intent" required in *Black* is the intention to communicate rather than the subjective intent to threaten.[3]

The undersigned agrees with the interpretation of the Court in *White*.  As stated by that Court, "the public policy rationale for prohibiting true threats that is outlined in *Black* supports a more objective test. 'A prohibition on true threats protects individuals from the fear of violence and the disruption that fear engenders, as well as from the possibility that the threatened violence will occur.'  If the prohibition on true threats is meant to protect listeners from the 'fear of violence' and the corresponding 'disruption

---

[3]  In reaching this result, the Court cited *United States v. Floyd*, 458 F.3d 844 (8th Cir. 2006), and *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 479 (S.D.N.Y. 2006). The Court in *White* recognized that both the Ninth and Tenth Circuit Courts of Appeals, respectively, in *United States v. Cassel*, 408 F.3d 622, 633 (9th Cir. 2005), *and United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), had interpreted the Supreme Court's definition of a true threat in *Black* to require subjective intent to threaten, in the context of those cases.  However, those decisions were not viewed as persuasive.

8

that fear engenders,' then the subjective intent of the speaker cannot be of paramount importance." 2010 WL 438088 at *8. *Accord United States v. Syring*, 522 F. Supp. 2d 125, 129 (D.D.C. 2007) (finding irrelevant whether defendant had any intent to actually inflict harm, quoting the same language from *Black*, 538 U.S. at 360, upon which the *White* court relied). Thus, the undersigned concludes that *Black* does not require subjective intent to threaten, but only, as stated in the Eleventh Circuit Pattern Jury Instruction quoted above, that the Defendant knowingly sent a message that contained a true threat.

Moreover, an objective interpretation does not sweep too broadly, and would not encompass the "protected speech" envisioned in the Defendant's Motion. Although it is true, as the Defendant asserts, that the threat is punishable even if communicated through a third party,[4] the third party could not be convicted under the statute absent evidence that a reasonable person would interpret the statement as a serious expression by that third party to inflict bodily harm. As recognized by the Sixth Circuit Court of Appeals in *United States v. Alkhabaz*, 104 F.3d 1492, 1495-96 (6th Cir. 1997), in holding that only objective intent is required under section 875(c), a defendant making the communication can be convicted of committing a crime under this statute only where a reasonable person would perceive the threat as coming from that person (i.e., that the charged defendant threatened bodily harm, from an objective perspective).[5] Thus, the

---

[4] *United States v. Kelner*, 534 F.2d 1020, 1023 (2d Cir. 1976) (threat can be made through the use of an innocent intermediary); *United States v. Bloom*, 834 F.2d 16, 18-19 (1st Cir. 1987) (no requirement of authorship).

[5] Specifically, the Court stated: "[T]o constitute 'a communication containing a threat" under Section 875(c), a communication must be such that a reasonable person (1) would take the statement as a serious expression of an intention to inflict bodily harm (the mens rea), and (2) would perceive such expression as being communicated to effect some change or achieve some goal through intimidation (the actus reus).' " 104 F.3d at 145.6

Court stated that the examples of an overbroad application set forth in that case did not fall within the scope of the statute–for example, if the court sent a copy of its opinion containing the threatening language to West Publishing Company; or, if a member of the general public took notes on threatening statements made during a trial and sent them to a family member–since using an objective standard, it was unlikely that any reader's sense of personal safety and well-being would be jeopardized, and the sender's action would not fall within the scope of the statute.  As stated by the Court, "In both cases, the recipient's sense of well-being is not endangered because, from an objective standpoint, the *sender* has no desire to intimidate."  104 F.3d at 1496 (emphasis supplied).

The Second Circuit Court of Appeals made a similar observation in *New York ex rel. Spitzer v. Operation Rescue National*, 273 F.3d 184, 196-97 (2d Cir. 2001), albeit in a different context, "When determining whether a statement qualifies as a threat for First Amendment purposes, a district court must ask whether 'the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution' . . . . Although proof of the threat's effect on its recipient is relevant to this inquiry, a court must be sure that the recipient is fearful of the execution of the threat *by the speaker (or the speaker's co-conspirators*).  Thus, generally, a person who informs someone that he or she is in danger from a third party has not made a threat, even if the statement produces fear."  (emphasis added, internal citations omitted).

Similarly, in the case at bar, the examples given by the Defendant with respect to "third party" communications of the allegedly threatening remarks would not subject the *sender* (i.e., the prosecutor, case agent, court, or media reporters) to criminal liability

10

because no reasonable person would feel threatened by that sender.  Therefore, the undersigned concludes that by limiting the scope of the statute to "true threats," as defined by the Eleventh Circuit Pattern Jury Instruction, it does not criminalize a substantial amount of expression protected under the First Amendment.

      V.    <u>THE STATUTE IS NOT IMPERMISSIBLY VAGUE</u>

      The Defendant also contends that the statute is impermissibly vague, although she acknowledged at the hearing that this was a much weaker argument than the overbreadth challenge.  The thrust of this challenge is that section 875(c) does not define what is meant by a "threat;" and, that it therefore fails to provide a person with "a reasonable opportunity to know what speech is prohibited and what is not."  (DE # 27 at 9 - 10).  In response, the Government states that the term, "threat to injure the person of another" is commonly understood, and that every court to consider the issue has so held.

      In *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972), the United States Supreme Court set forth the standards for determining whether a statute is unconstitutionally vague:

> Vague laws offend several important values.  First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.  Vague laws may trap the innocent by not providing fair warning.  Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

Numerous courts have recognized that the term "threat to injure the person of

another" is commonly understood.  *See, e.g., United States v. Sutcliffe*, 505 F.3d 944, 953-54 (9th Cir. 2007) ("[W]e are convinced that the statute is not impermissibly vague. An ordinary citizen can understand what is meant by the terms "threat to kidnap" and "threat to injure," and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner."); *United States v. Tiller*, No. 07-50067, 2010 WL 4690511 at *1 (W.D. La. Oct. 21, 2008) ("Even considering the general intent requirement . . . an ordinary citizen can understand what is meant by the terms 'transmit,' 'threat to kidnap,' and 'threat to injure the person of another,' and the statute easily provides sufficient standards to allow enforcement in a non-arbitrary manner.").

Therefore, the statute is not impermissibly vague since the ordinary citizen can understand what is prohibited; and, there is no danger of arbitrary enforcement since the statute permits prosecution only with respect to statements that are made under circumstances that would lead a reasonable person to believe that the Defendant intended to injure another person.

## VI.    CONCLUSION

Based upon a review of the record as a whole, and for the reasons stated above, the undersigned concludes that the Indictment sufficiently alleges an offense since subjective intent is not an element of the crime charged; and, the statute under which the Defendant is charged is neither facially overbroad under the First Amendment, nor unconstitutionally vague. Therefore, it is hereby

**RECOMMENDED** that the Defendant's Motion to Dismiss Indictment (DE # 27) be **DENIED**.

The parties will have fourteen calendar days from the date of service of this Order

within which to file written objections, if any, for consideration by the United States District Judge to whom this case is assigned. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in chambers in Miami, Florida, on March 22, 2011.

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
The Honorable K. Michael Moore, United States District Judge
All counsel of record